**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**DMITRY LEVITIN,**

**Plaintiff,**

**v.**

**Civil Action 2:12-cv-34**
**Judge Algenon L. Marbley**
**Magistrate Judge Elizabeth P. Deavers**

**NATIONWIDE MUTUAL INSURANCE COMPANY,**

**Defendant.**

**DISCOVERY OPINION AND ORDER**

Plaintiff, Dmitry Levitin, brings this employment action against Defendant, Nationwide Mutual Insurance Company ("Nationwide"), asserting national origin discrimination and retaliation claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Ohio Fair Employment Practices Act, O.R.C. § 4112 *et seq.*, as well as state-law claims for negligent supervision, training, retention, and intentional infliction of emotional distress. This matter is before the Court for consideration of Plaintiff's Renewed Expedited Motion for a Protective Order (ECF No. 18), Defendant's Memorandum in Opposition (ECF No. 21), and Plaintiff's Reply (ECF No. 23). For the reasons that follow, Plaintiff's Motion is **GRANTED IN PART AND DENIED IN PART**.

**I.**

Plaintiff is a forty-six-year-old information technology professional who immigrated to the United States at age twenty-eight from Belarus, a constituent of the former Soviet Union. Defendant employed Plaintiff from January 2008 until he resigned in February 2011. According to Plaintiff, from March 2010 until his departure from Nationwide, his co-workers subjected him to unwelcome harassment and discrimination because of his national origin. He alleges that after he formally reported the harassment, his managers began to harass and retaliate against him in a number of ways which interfered with his work performance and caused him to experience anxiety, panic attacks, and depression. Plaintiff further alleges that on August 24, 2010, Defendant retaliated against him by giving him the performance rating "Does Not Meet" and placing him on "performance coaching." (Compl. ¶¶ 23, 67, ECF No. 1.)

Plaintiff filed this action on January 11, 2012. In the course of discovery, Defendant served interrogatories and document requests seeking, among other things, that Plaintiff provide the names of each entity for whom he had worked; the positions he held; a description of the duties involved; the dates of his employment; and the reason his employment ended. Plaintiff responded with the names of fourteen entities, but failed to include any further information. Plaintiff's response to Defendant's interrogatory request seeking detailed information concerning other charges, complaints, lawsuits, grievances, or other claims he filed was similarly deficient. After Defendant expressed its intent to obtain the requested information through subpoenas to the former employers for whom it could locate addresses online, Plaintiff provided dates of his employment with the subpoenaed entities, added some detail concerning the nature of his employment, and identified additional prior employers. Defendant revised its subpoeanas to

account for this new information and served a total of nine subpoenas to nine of Plaintiff's former employers. The subpoenaed employers included STREFCO Consultants, QA Vision, LLC ("QA Vision"), Humana, Inc., Kaiser Permanente, HSA Communications, CSG Systems, Surrex Consulting, Inc., ProntoTest, LLC ("Pronto"), and OEA, Inc. Defendants sought information going back nearly twenty years of Plaintiff's employment. Only one of the subpoenas issued from this Court. Each of the subpoenas command production of "records related to [Plaintiff's] performance, discipline, and termination or resignation as an employee, independent contractor, or consultant, and any records related to complaints of discrimination made by [Plaintiff]." (Defs.' Subpoenas, ECF No. 21-7.) The subpoena Defendant served on QA Vision, LLC ("QA Vision"), an employer Plaintiff worked for before, during, and after his employment with Defendant, additionally demanded Plaintiff's "pay records, records of benefits, and expense reports." (*Id*.)

Per the parties' request, on July 31, 2012, the Court held a telephone conference to discuss Plaintiff's objections to these subpoenas. To address some of the concerns Plaintiff raised, Defendant offered to enter into a protective order to preserve the confidentiality of the information requested. The parties subsequently stipulated to a protective order, which this Court approved. (ECF No. 25.) Defendant further offered to place a temporal limit of ten years prior to the date Plaintiff began his employment with Defendant on its requested discovery from Plaintiff's former employers. Despite Defendant's concession and this Court's encouragement, the parties were unable to extrajudicially resolve Plaintiff's objections.

Plaintiff filed the subject Expedited Motion for a Protective Order on August 6, 2012. Through this Motion, Plaintiff seeks a protective order precluding Defendant from seeking

discovery from his former employers. In support of the requested protective order, Plaintiff posits that the discovery at issue lacks relevance, is designed to harass and embarrass him in his profession, subjects him to undue burden and expense, and violates his privacy interests. Defendant opposes Plaintiff's Motion. Defendant counters that the information requested is reasonably calculated to lead to the discovery of admissible evidence and that Plaintiff has not met his burden to establish the propriety of the requested protective order.

**II.**

Federal Rule of Civil Procedure 26(c)(1) requires a party moving for a protective order to include a certification that the movant has, in good faith, conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. Fed. R. Civ. P. 26(c)(1). The Court is satisfied that this prerequisite to a motion for a protective order has been met in this case.

Determining the scope of discovery is within this Court's discretion. *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998). As the United States Court of Appeals for the Sixth Circuit has recognized, "[t]he scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). In particular, discovery is more liberal than the trial setting, as Rule 26(b) allows any "line of interrogation [that] is reasonably calculated to lead to the discovery of admissible evidence." *Id.* (quoting *Mellon v. Cooper-Jarrett, Inc.*, 424 F.2d 499, 501 (6th Cir. 1970)). In other terms, the Court construes discovery under Rule 26 "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). In considering the scope of

discovery, the Court may balance Defendant's "right to discovery with the need to prevent 'fishing expeditions.'" *Conti v. Am. Axle and Mfg., Inc.*, 326 F. App'x 900, 907 (6th Cir. 2009) (quoting *Bush*, 161 F.3d at 367).

Rule 26(c) affords district courts with the discretion to further limit the scope of discovery under certain circumstances. Specifically, a court may issue a protective order "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters" to prevent "annoyance, embarrassment, oppression, or undue burden or expense" where the movant has established good cause for such an order. Fed. R. Civ. P. 26(c)(1); *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001). "To show good cause, a movant for a protective order must articulate specific facts showing clearly defined and serious injury resulting from the discovery sought and cannot rely on mere conclusory statements." *Id.* (internal quotation marks and citation omitted).

**III.**

The Court first considers whether the records Defendant seeks to discover from Plaintiff's former employers fall within the scope of Rule 26(b) before considering whether he has met his burden to demonstrate that good cause exists to further limit the scope of discovery under Rule 26(c).

**A. Analysis under Rule 26(b)**

According to Plaintiff, records from his former employers fall outside the scope of permissible discovery because "he has not placed his employment records with other past employers at issue . . . ." (Pl.'s Mot. 12, ECF No. 18.) Plaintiff adds that "[t]he facts and merits of any prior charge [of discrimination] are of absolutely no relevance." (*Id*. at 15.) Plaintiff

concedes that discovery from prior employers would make sense if he had only a limited employment history with Defendant, but posits that his three-year employment with Defendant afforded it ample time to evaluate his abilities and performance. He characterizes Defendant's efforts to discover information from his former employers as a "fishing expedition." (*Id*. at 15.) Defendant counters that its requests for records relating to performance, discipline, termination, and complaints of discrimination are discoverable in light of Plaintiff's allegations that the poor performance reviews he received were attributable to the alleged retaliation and the purported hostile work environment.

The Court agrees with Defendant that the records reflecting Plaintiff's performance reviews, evaluations, complaints, and reasons for termination fall within the scope of permissible discovery. Such records could bear on or could reasonably lead to other matters that could bear the credibility of Plaintiff's allegations relating to his performance, his qualifications, and the legitimacy of Defendant's proffered bases for the performance ratings it assigned to Plaintiff. This Court and other trial courts within the Sixth Circuit have likewise concluded that these types of records from former employers are discoverable in employment discrimination cases. *See Valentine v. Remke Markets, Inc.*, No. 1:10-CV-922, 2012 WL 893880, at *3–4 (S.D. Ohio Mar. 15, 2012) (declining to quash subpoena seeking employment records of former employer relating to job duties, discipline, performance reviews, complaints, attendance, and charges of discrimination, finding that such records could lead to the discovery of admissible records); *Quinn v. Conagra Foods Packaged Foods LLC*, No. 3:09-CV-214, 2010 WL 3603780, at *1 (S.D. Ohio Sept. 10, 2010) (holding that records from four of the plaintiff's former employers were discoverable over the plaintiff's objection that "the information could be obtained less

intrusively" through deposition testimony of the plaintiff, noting that "any competent cross-examiner would want to see and use relevant documents in the course of such a deposition"); *Stewart v. Orion Fed. Credit Union*, No. 12-CV-2111, 2012 WL 3171824, at *2–3 (W.D. Tenn. Aug. 2, 2012) (concluding that the plaintiffs' performance reviews, evaluations, and reasons for terminations from former employers were discoverable, explaining that "such records could be relevant to [the plaintiffs'] performance at [the defendant] and the legitimacy of any purported reasons presented by [the defendant] for their termination"); *Serrano v. Cintas*, No. Civ.A. 04-40132, 2006 WL 585714, at *1–2 (E.D. Mich. Mar. 9, 2006) (denying motion to quash subpoenas seeking records in personnel files of the plaintiffs' former employers, finding that their work histories could bear on whether the plaintiffs were qualified); *Stokes v. Xerox Corp.*, No. 05-CV-71683-DT, 2006 WL 6686584, at *4 (E.D. Mich. Oct. 5, 2006) (holding that prior charges of discrimination are discoverable as they could bear on the plaintiff's credibility in present discrimination action).

The Court further concludes that the records Defendant seeks from QA Vision, including Plaintiff's pay records, records of benefits, and expense reports, are discoverable for similar reasons and also because these requests are reasonably calculated to lead to the discovery of admissible evidence relating to the issues of damages and mitigation. *See Stewart*, 2012 WL 3171824 at *3 (records from subsequent and current employers discoverable because such records bear on issue of mitigation of damages); *Noble v. Ruby Tuesdays Rests, Inc.*, No. 2:-06-cv-259, 2007 WL 3125131, at *3 (S.D. Ohio Oct. 23, 2007) (in discrimination action, "[e]mployment records are relevant to the issues of mitigation and damages"). Because Plaintiff worked at QA Vision before, during, and after his employment with Defendant, his performance

records could lead to relevant evidence concerning how the purportedly hostile work environment and his alleged resultant emotional distress affected his performance at QA Vision and whether it improved when he left Defendant's employment. Similarly, these records could lead to probative evidence concerning whether events at QA Vision, such as an increased work schedule, could have contributed to his purportedly poor work performance with Defendant.

Finally, notwithstanding the foregoing, the Court agrees with Plaintiff that requests for documents from employers for whom he has not worked in more than a decade are not reasonably calculated to lead to the discovery of admissible evidence bearing on issues in this case. Thus, a temporal limit is appropriate. *See Stewart*, 2012 WL 3171824 at *2 (discovery of employment records going back twenty years is questionably relevant but discovery of records going back three employers and fourteen years is close enough in time to be relevant); *Shirazi v. Childtime Learning Ctr., Inc.*, No. CIV-07-1289-C, 2008 WL 4792694, at *3 (W.D. Okla. Oct. 31, 2008) (discovery of past employer records going back five years is within reasonable proximity to plaintiff's employment by defendant). As set forth above, Defendant has offered to limit discovery to the ten years preceeding his February 2008 commencement of employment with Defendant and also to exclude international employers. Upon review of Plaintiff's employment history, the Court agrees that Defendant's offered temporal limit is reasonable. Therefore, the Court limits the scope to of discovery to his four most recent employers, CSG

Systems, Pronto, Surrex, and QA Vision.[1] Of course, Defendant is free to seek deposition testimony from Plaintiff concerning all of his past employment and may return to the Court to expand the scope of discovery should it obtain information suggesting other of Plaintiff's former employers have records that might be relevant to issues presented in this case.

In sum, given the nature of Plaintiff's claims and the defenses Defendant raises, the records that Defendant seeks to discover from CSG Systems, QA Vision, and Surrex fall within the broad scope of discovery permitted under Rule 26(b). The Court now considers whether Plaintiff has established good cause for the protective order he seeks.

**B. Analysis Under 26(c)**

Plaintiff submits that good cause exists for entry of a protective order under Rule 26(c) further limiting discovery because Defendant's requests for information from former employers will cause him and the subpoenaed employers to face undue burden and expense; are designed to annoy and embarrass him; and will violate his privacy interests. The Court considers each of Plaintiff's arguments in turn.

**1. Undue Burden and Expense**

Plaintiff maintains that if this Court does not grant it a protective order, he "will face undue burden and expense to file motions to quash." (Pl.'s Mot. 9, ECF No. 18.) He explains

[1]According to Plaintiff's Declaration, he worked for CSG Systems from February 1998 until January 2000 and again as a contract worker from April 2000 through January 2011. He worked for Pronto from April 1999 through January 2000. He has worked for QA Vision since April 2000. He worked for Surrex from September 2006 through January 2008. HSA Communications is excluded given that Plaintiff worked there for only three months in 2000 as a contractor.

that he will be required to pay a filing fee in each district and likely need the assistance of local counsel. He also notes that "his prior employers are likely to be unduly burdened." (*Id*.)

Plaintiff's arguments are not persuasive. "'[D]istrict courts have discretion to limit the scope of discovery where the information sought is overly broad or *would prove unduly burdensome to produce*.'" *Info-Hold, Inc. v. Sound Merch., Inc*., 538 F.3d 448, 457 (6th Cir. 2008) (quoting *Surles ex rel. Johnson v. Greyhound Lines, Inc*., 474 F.3d 288, 305 (6th Cir. 2007)) (emphasis added). Here, the subpoenas are directed to Plaintiff's prior employers. Thus, only Plaintiff's prior employers have standing to challenge the subpoenas on the ground that production of the subpoenaed documents would pose an undue burden expense. *See McNaughton-McKay, Elec. Co. v. Linamar Corp*., No. 09-cv-11165, 2010 WL 2560047, at *3 (E.D. Mich. June 15, 2010) (citation omitted) (party had no standing to argue that subpoena would cause subpoenaed party undue burden where the subpoenaed party had not objected to the subpoena on this ground); *Tarazi v. Oshry*, No. 2:10-CV-793, 2011 WL 3608119, at *2 (S.D. Ohio Aug. 15, 2011) (acknowledging that a party must establish that it properly represents the interests of outside third parties in order to file a motion for a protective order on behalf of those third parties).

Plaintiff's unsupported assertion that he personally will face an undue burden is equally unpersuasive. The filing fee to open a miscellaneous case in any district court is forty-six dollars. In light of the temporal limit this Court has imposed on the discovery of records from Plaintiff's prior employers, only three of the subpoenas, the Surrex, Pronto, and CSG Systems subpoenas, issued from other districts, two of which issued from the United States District Court for the District of Colorado, for a potential total of ninety-two dollars in filing fees. Further,

Plaintiff does not explain why he intends to hire local counsel to challenge the subpoenas, what he expects the cost to do so would be, or offer evidence demonstrating that any such cost would pose an undue burden.

**2. Annoyance and Embarrassment**

Plaintiff next asserts that issuing subpoenas to his former employers will cause him annoyance and embarrassment because such discovery "will have a chilling effect on [his] ability to obtain future referrals from [those] contacts." (Pl.'s Mot. 9, ECF No. 18.) Plaintiff's unsupported speculation that his former employers will retaliate against him is not enough to establish the requisite good cause showing for a protective order.[2] *See Nix*, 11 F. App'x at 500 (to establish good cause for a protective order, the movant must set forth specific facts demonstrating a "clearly defined and serious injury" and "cannot rely on mere conclusory statements"); *Serrano*, 2006 WL 585714 at *2 (permitting discovery from former employers over plaintiffs' objections, noting that "[t]he plaintiffs have produced no persuasive evidence of retaliation or other ill effects upon them as a result of the subpoenas"); *Underwood v. Riverview of Ann Arbor*, No. 08-CV-11024-DT, 2008 WL 5235992, at *2 (E.D. Mich. Dec. 15, 2008) (burden to establish good cause for protective order not met where party provided "no specific facts demonstrating a serious injury to support . . . conclusory statement [of harm]"); *cf. Valentine*, 2012 WL 893880 at *1, *3 (plaintiff's unsupported contention that permitting discovery of records from former employers relating to complaints of discrimination would have a "chilling effect" on a plaintiff's exercise of protected rights insufficient to establish good cause

---

[2]Moreover, Plaintiff's assertion of harm also requires this Court to presume that the individuals responding to the subpoenas will also be the same individuals he would ask for referrals rather than his former employers' record custodians.

for a protective order). The Court, therefore, declines to further narrow the scope of discovery due to Plaintiff's unsubstantiated assertion of harm.

**3. Privacy Interests**

Finally, Plaintiff posits that disclosure of the information Defendant requests from his former employers will violate his privacy interests in his employment records. As noted above, after Plaintiff filed the instant Motion, the parties entered into a stipulated protective order to preserve the confidentiality of certain types of sensitive documents. (ECF No. 25.) It is unclear whether the parties' stipulated protective order resolves Plaintiff's privacy interest concerns. Regardless, Plaintiff's objection to the subpoenas on this ground is outside the scope of the Court's analysis under Rule 26(c) and is more appropriately raised in the jurisdiction from which the subpoenas issued. *See* Fed. R. Civ. P. 45(c)(3) (issuing court to handle motions to quash or modify premised upon the assertion that the subpoena requires disclosure of privileged or other protected matter).

**IV.**

For the foregoing reasons, Plaintiff's Renewed Expedited Motion for a Protective Order is **GRANTED IN PART AND DENIED IN PART**. (ECF No. 18). Defendant may inform Plaintiff's CSG Systems, Pronto, Surrex, and QA Vision to respond to its subpoenas.

**IT IS SO ORDERED**.

Date: December 14, 2012

/s/ *Elizabeth A. Preston Deavers*
Elizabeth A. Preston Deavers
United States Magistrate Judge